[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a fully contested action for dissolution of marriage and other relief brought to the judicial district of New Haven. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant whose maiden name is Susan R. Hill were married on July 23, 1988 in New Haven, Connecticut. Both parties have resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage, Taylor E. Samuels born November 14, 1991 and Shannon R. Samuels born February 27, 1993. Neither party has CT Page 10959 received state assistance.
The plaintiff claims that the defendant had a personality change during 1997 and 1998 which he attributes to her use of narcotic substances. The court finds that no credible evidence has been submitted that the defendant was using narcotics. During the course of the trial, the plaintiff also attempted to prove that the defendant was involved in a relationship with other men during the marriage. The court finds that the defendant has not been involved in any such relationships. From all the evidence presented the court finds that the parties are equally at fault for the breakdown of the marriage.
The plaintiff is a state police captain. He joined the state police in 1979. He graduated high school in 1972. He also attended Dowling University for two years and the State University of New York. He is now enrolled in a masters program and will need one to one and one-half years to obtain his masters degree.
This is the second marriage for the plaintiff. He was previously divorced in 1983 or 1984 and has a fourteen year old son from that marriage for whom he pays $100 weekly support and provides health benefits.
In the fall of 1997 the plaintiff returned to college in Springfield, Massachusetts. In his first semester he would attend college two to three nights a week and every other weekend. His college classes were from 6:00 p. m. to 9:00 p. m. He would normally get home approximately 10:00 to 10:30 p. m. from Springfield. This schedule started in September or October 1997 and continued until December 1998. The defendant cared for the children when he was in class. When the parties first married the plaintiff averaged twenty hours weekly overtime in addition to his regular forty hour week. After the children were born he continued to work a lot of overtime averaging approximately 800 hours overtime per year. The overtime ended in 1993 or 1994 when he was promoted to Lieutenant.
The plaintiff has a gross weekly income of $1,525 and a net weekly income of $1,281. The $110 weekly rent that he shows on schedule A to his financial affidavit dated April 13, 1999 is the rent that he pays for the one bedroom home that he rents in Meriden, Connecticut where he resides alone. The $317 weekly that he shows on his financial affidavit under weekly expenses is the CT Page 10960 payment of the monthly mortgage of $1,365. He is also providing life insurance that costs $14 weekly as well as health insurance and is paying the defendant $100 weekly support. Schedule A to his financial affidavit also shows a $60 weekly payment for children's tuition. The cost for each child for tuition at St. Brendan's is $3,100 annually. His financial affidavit shows a balance due to Nation's Bank of $3,000. That is a credit card that was used for clothing and other household items. Approximately $1,000 of that was for his own personal use. He also has a liability to People's Bank with a balance of $6,000. That was incurred for tools, a bed, sheets and other items that he had to purchase when he vacated the family home. Approximately $3,000 of that amount was incurred since he vacated the family home. He has a CALS (student loan) that was incurred as a result of his attendance at Cambridge College from 1997 to date with a balance of $7,000. He pays that loan at the rate of $60 monthly. He had received a settlement in 1996 of $50,000 that he invested in 3,300 shares of stock in INTD. He has since sold 300 shares and has remaining 3,000 shares in INTD. The value of those shares of stock at the present time is approximately $4,500. The settlement was due to a car accident and a back injury that the plaintiff incurred. He owns a camper that was purchased in late 1995 that has a value of $8,000. The balance of an $11,000 loan on the camper was paid off from the plaintiffs settlement. The plaintiff owns a 1995 BMW with a fair market value of $2,500. That vehicle is used by the defendant. The plaintiff also owns a 1996 Chevrolet Suburban with a fair market value of $20,000 and a loan balance of $15,000 and an equity of $5,000.
The 1996 Chevrolet Suburban was purchased in 1996. It was originally a loan incurred to purchase a camper. That loan has since been paid off.
The plaintiff shows that he has a pension plan at his place of employment. He has been employed by the state police for twenty years. He is able to receive 50% of his salary at retirement based on the average of his highest three years including overtime. After twenty years the retirement increases 2% per year. He also has a 401K plan with a balance of $10,200.
The cost to maintain Cobra benefits for the defendant including physician, hospital, dental and prescription will be $208 monthly.
The family home located at 111 Pheasant Road, West Haven, CT Page 10961 Connecticut was purchased in 1995 for $130,000. Its present fair market value is $126,000 and it has a mortgage of $114,000 and an equity of $12,000. The property is in the plaintiffs name only as the defendant did not have good credit at the time of the purchase.
The defendant has the following liabilities:
Creditor Balance Due
Filene's $800 Sears 1,600 America One 600 MCI 300 ATT 200 Capitol One 600 Citibank 1,000
The defendant has bank accounts totaling approximately $59. She does not have any stocks or bonds, deferred compensation plans or other type of assets.
The plaintiff expressed various concerns to the defendant having custody of the children including the following: (a) the ability of the defendant to manage financially, (b) the children's tardiness at school, (c) the children's lunches at school and their attire at school, (d) the defendant not allowing the plaintiff to care for the children when she was away, (e) the use of drugs by the defendant and (f) the continued occupancy of the family home following dissolution. These concerns will be addressed seriatim.
I THE PLAINTIFF'S CLAIM THAT TILE DEFENDANT WILL NOT BE ABLE TO MANAGE FINANCIALLY.
The plaintiffs claim in this regard is his concern that the defendant will not be able to manage financially and therefore the children would wind up living in substandard housing if they were in her custody.
It is true that the defendant incurred a number of bills that it was her responsibility to pay including America One $732.00, ATT $267.21, MCI $152.72, Citibank Master Charge $1,473.28, SNET $557.23, Filene's $693.71, IC. Penney $332.10, Sears $1,702.50 and New Haven Library $78.00. All of those bills were incurred CT Page 10962 prior to pendente lite orders being entered.
Very few of the creditor balances now owed by the defendant were incurred after the pendente lite orders were entered. There is therefore no reason to believe that the defendant would not be able to manage her finances or that the children would wind up living in substandard housing if they were in the custody of the defendant.
II THE PLAINTIFF'S CLAIMS REGARDING THE CHILDREN'S TARDINESS AT SCHOOL.
Both children presently attend St. Brendan's School in New Haven, Connecticut.
The parties are in dispute as to whether Taylor was late twenty-four times in the school year of September 1997 to June 1998 or whether she was late fifty to sixty times as stated in the family relation's report.
From the evidence presented the court finds that Taylor was late twenty-four times during the school year in question. The child's first grade teacher became upset at the number of times that Taylor was tardy and contacted the defendant as well as the school principal. The reasons that Taylor was brought to school late by the defendant had to do in part with the defendant's job and in part with transportation. Approximately half of the time that Taylor was late was as a result of the defendant's vehicle not being able to be operated and the refusal of the plaintiff to allow the defendant to use his vehicle. The other approximate one-half of the time that Taylor was late was the defendant's fault. The parties are also in dispute as to whether the school principal informed family relations that the defendant attempted to avoid tardiness regarding Taylor by slipping past the office of the school principal with Taylor. The court finds that that conduct did not occur.
III THE PLAINTIFF'S CONCERN REGARDING THE CHILDREN' S LUNCHES AT SCHOOL AND THEIR ATTIRE AT SCHOOL.
It is true that for a period of time that there was concern regarding the children not being packed adequate lunches by the defendant to bring to school and regarding their not being dressed properly. Those concerns were called to the attention of the defendant and these problems have currently subsided as of CT Page 10963 March 1999.
IV THE PLAINTIFF'S CONCERN REGARDING THE DEFENDANT NOT ALLOWING HIM TO CARE FOR THE CHILDREN WHEN THE PLAINTIFF WAS AWAY.
It is true that there were periods of time that the defendant would leave the children with a proper babysitter when she was away overnight rather than allowing the plaintiff to care for the children. However, the defendant at all times cooperated insofar as having the children available for visitation in accordance with the pendente lite visitation agreement.
V THE PLAINTIFF'S CONCERN REGARDING THE USE OF DRUGS BY THE DEFENDANT.
During the course of the trial the plaintiff attempted to prove that the defendant was using illegal drugs. From all of the evidence presented the court finds that the defendant has not used illegal drugs.
VI THE PLAINTIFF'S CONCERN REGARDING THE CONTINUED OCCUPANCY OF THE FAMILY HOME FILED IN THE DISSOLUTION.
During most of the trial the defendant took the position that she was not interested in continuing to occupy the family home following dissolution and intended to acquire a new residence for herself and the children. The plaintiffs concern in this regard relates to his belief that the defendant will have the children reside in substandard housing. During the course of the trial the defendant changed her position and stated that she wished to continue to reside in the family home following dissolution. The court finds that the children are not particularly attached to the family home and living in a different residence would not affect what is in their best interest.
In determining the best interest of the child standard regarding custody and visitation, the court in Cappetta v.Cappetta, 196 Conn. 10, 16, 17 (1988) stated in part as follows:
 The award of custody requires the trial court to make difficult and sensitive inquires into the relationships between adults and children. In the search for an appropriate custodial placement, the primary focus of the court is the best interests of the child, the child's interest in sustained growth, development, well-being, and in the continuity andCT Page 10964 stability of its environment. Such a search requires the court to afford all interested parties an opportunity for a hearing concerning the qualifications of each person who is or may be a candidate for custody. It is essential to inquire into each person's parenting skills as well as his or her relationship with the child. (Emphasis provided.)
In discussing the best interest of the child standard, the court in Blake v. Blake, 207 Conn. 217. 224-225 (1988) stated in part as follows:
 In making a determination of custody, the trial court is "bound to consider the child's present best interest and not what would have been in her best interests at some previous time. (Emphasis provided).
The Blake court also cited with approval the case of Yontefv. Yontef, 185 Conn. 275, 283, 440 A.2d 899 (1981). The Yontef
court held in part as follows:
 The test is not which parent was the better custodian in the past but which is the better custodian now. See, e.g., Trunik v. Trunik, 179, 287, 290, 426 A.2d 274 (1979); Spicer v. Spicer, supra 164; Simons v. Simons, supra, 350. Just as we have refused to adopt a conclusive presumption that a mother is always entitled to custody in preference to a father; see, e.g. Simons v. Simons, supra, 350; so also have we rejected any presumption that a parent's life style necessarily has an adverse effect on a child. Gallo v. Gallo, 184 Conn. 36, 42, 440 A.2d 782 (1981). In the exercise of its awesome responsibility to find the most salutary custodial arrangement for the children of divorce the court must however take account of the parents' past behavior, since it must evaluate consistency of their parenting for the purpose of determining which parent will better foster the children's growth. development and well-being. Seymour v. Seymour, supra. 711. (Emphasis provided.)
At the present time neither of the girls show any emotional problems in school. Both are doing fine in school. At the present time both children come to school with appropriate lunches, are properly dressed and are prepared for school. There has been a great improvement shown with both children over the prior school year of September, 1997 to June, 1998. CT Page 10965
For the school year September 1998 up until March of 1999 Taylor has not been absent and has been tardy twelve times. Shannon has not been absent and has been tardy fifteen times.
The court finds that both the plaintiff and defendant are fit parents and both can provide for the emotional and educational needs as well as the activities, hygiene and nutritional needs of the children. The plaintiff acknowledges that the defendant was a very good mother until approximately two years ago when he claims that she changed due to substance abuse. The court finds that no such change took place and there was no substance abuse by the defendant.
After each of the two girls were born, the defendant took time out from work to care for them.
The plaintiff presently sees the children three times a week from 5:30 P.M. to 8:30 P.M. and from Saturday morning to Sunday at 6:00 P.M. on alternating weekends. The decision for the children to attend St. Brendan's was a joint decision made between the plaintiff and defendant and they agreed to equally split the costs.
For the purpose of the child support guidelines, the court finds that the plaintiffs gross weekly income is $1,525 and his net weekly income is $1,039, and the defendant's gross weekly income and net weekly income are $190. The combined weekly income rounded to the nearest $10 is $1,230 with a basic child support obligation being $344. There is a child health insurance premium of $16 weekly increasing the total support to $360. The plaintiffs share is 84% and the defendant's share is 16% which results in the plaintiffs share of the total support obligation being $304. There is deducted from that amount the $16 health insurance premium which results in a recommended child support under the guidelines of $288 weekly. The plaintiffs share of unreimbursed medical expenses is 61% and the defendant's share is 39%.
In determining the issue of custody, the court has considered the children's present best interest and not what would have been their best interest at some previous time. The court has taken into account each parent's past behavior in evaluating the consistency of their parenting for the purpose of determining which parent would better foster the childrens' growth, development and well being. The court finds that it is in the CT Page 10966 best interest of the children that they reside primarily with the defendant.
The court finds that the present value of the plaintiffs pension plan before reductions is $896,555.66. The valuation of the plan after being reduced by 0.5306 which represents the marital coverture fraction is $475,712.43.
This court has considered the provisions of § 46b-56 (b) regarding the issue of custody and visitation and has considered the provisions of § 46b-56a and § 46b-56b regarding the issue of joint custody, and has considered the provisions of § 46b-56 (c) and § 46b-84 regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees, and has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of § 46b-81
regarding the issue of assignment of property. The court enters the following orders:
A. By Way of Dissolution of Marriage
 1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. By Way of Custody, Visitation and Support
 1. The court enters an order of joint physical custody of the children with primary physical residence with the defendant. This court agrees with the observation of the guardian ad litem that the minor children in this case deeply love both parents and are attached to their mother and father. The visitation order entered contemplates the continued, active involvement of both parents in the lives of the children and the continued involvement of both parents is essential to the children's continued growth and development.
2. The plaintiff shall have liberal and flexible visitation with the children which shall include, at a minimum, the following:
a. Every other week and from Friday at 5:00 P.M. until Sunday at 7:00 P.M;
b. When school is in session two, (2) mid-week visitations beginning at 5:30 P.M. and ending at 8:00 P.M. When school is not CT Page 10967 in session, there shall be three (3) mid-week periods of time ending at 9:00 P.M.;
c. Each parent should have two (2) weeks of vacation time with the children during the summer months, which may be consecutive provided that either parent is away with the children on a bona fide vacation. If the children are remaining at the residence of either parent during selected vacation periods, then the other parent should be entitled to reasonable visitation time with the children (even during a so-called vacation period).
d. The plaintiff is to arrange for pick-up and drop off of the children during visitation;
e. The parents shall alternate major holidays in accordance with the following schedule:
 THANKSGIVING: 1999 and the odd years with the plaintiff from noon till 11:00 A.M. the next day.
 CHRISTMAS EVE: 2000 and the even years with the plaintiff from 3:00 P.M. until 11:00 A.M. Christmas Day.
 CHRISTMAS DAY: In 1999 and the odd years with the plaintiff from 11:00 A.M. until 6:00 P.M.
 NEW YEARS EVE AND DAY: In 1999 and the odd years, the children shall be with the plaintiff from 3:00 P.M. on the eve until 6:00 P.M. New Years Day.
 EASTER SUNDAY: The children shall be with the father on Easter Sunday in the year 2000 and the even years beginning 6:00 P.M. the Saturday before until 6:00 P.M. Easter Sunday.
 MEMORIAL DAY: In 2000 and the even years with the plaintiff from 6:00 P.M. the Sunday before, until 6:00 P.M. on Memorial Day.
 JULY 4th: The odd years with the plaintiff from 6:00 P.M. July 3rd until 6:00 P.M. on the 4th.
 LABOR DAY: In 1999 and the odd years with the father from 6:00 P.M. the Sunday before until 6:00 P.M. on Labor Day.
 MOTHER'S DAY: The children shall be with the defendant mother CT Page 10968 from 6:00 P.M. the Saturday before until 6:00 P.M. of Mother's Day.
 FATHER'S DAY: The children shall be with the plaintiff father from 6:00 P.M. the Saturday before until 6:00 P.M. on Father's Day.
 PARENT'S BIRTHDAY: The children shall be available to celebrate the birthday of each parent, and the parties shall cooperate to effectuate this provision.
 CHILDREN'S BIRTHDAY: The parties shall cooperate so that each parent has an opportunity to celebrate a child's birthday with the particular child.
The major holiday schedule shall take priority over the weekend and midweek schedule.
f. In the event the defendant is out of the State of Connecticut without the children for any period in excess of twenty-four hours, or away from her residence without the children overnight within the State of Connecticut, the plaintiff shall be given the opportunity to care for the children before any other caretaker. The defendant shall notify the plaintiff of the name, address and telephone number of any alternate caretaker in the event that the plaintiff is unable to care for the children during this period. In the event the plaintiff is out of the State of Connecticut without the children for any period in excess of twenty-four hours, or away from his residence without the children overnight within the State of Connecticut, the defendant shall be given the opportunity to care for the children before any other caretaker. The plaintiff shall notify the defendant of the name, address and phone number of any alternate caretaker in the event the defendant is unable to care for the children during this period.
g. The plaintiff is to pay to the defendant support in the amount of $288 weekly. The plaintiff is to provide health insurance for the benefit of the two children as is available through his place of employment. The first $100 of unreimbursed health expenses for each child are to be paid by the defendant. Any further unreimbursed medical expenses for the minor children as well as any qualified child care costs for the minor children are to be paid 61 % by the plaintiff and 39% by the defendant. The plaintiff has the right to claim each of the two minor CT Page 10969 children as exemptions for federal and state income tax purposes for each year in which he is current in both his support payments and alimony payments at the end of such calendar year. An immediate wage execution is authorized for the alimony and support payments with payment to be made through the support enforcement division.
h. Both parties have agreed that the children should continue to attend St. Brendan's School until they complete the eighth grade. The court orders that the children continue to attend St. Brendan's School until they complete the eighth grade with the parties to split equally the tuition and other related expenses for the children to attend that school.
i. In the event either party changes their residence beyond twenty-five miles of their current residence such parties shall give at least thirty days advance written notice to the other party of the new residence address.
C. BY WAY OF ALIMONY
 1. The plaintiff is ordered to pay the defendant alimony in the sum of $190 per week.
2. Alimony is to terminate upon the death of the plaintiff or the defendant or the remarriage of the defendant, or May 1, 2009 whichever first occurs. The court finds that by May 1, 2009 the oldest child Taylor will be about to graduate from high school and therefore the defendant will have less of a need to provide child care and will therefore be able to secure full time employment. The length of the alimony is non-modifiable beyond May 1, 2009.
3. The provisions of Section 46b-86 (a) and 46b-86 (b) are applicable.
4. He is also to make available health insurance for the benefit of the defendant in accordance with COBRA with the cost of said health insurance for the defendant to be born solely by the defendant.
5. The court finds in accordance with Section 46b-82 that it is desirable for the defendant mother to not have to secure full time employment in order for her to be available to care for the children and that her present employment gives to her flexibility CT Page 10970 that is needed for that purpose.
D. BY WAY OF PROPERTY ORDERS
 1. The plaintiff is to pay the liabilities shown on his financial affidavit and hold the defendant harmless.
2. The defendant is to pay the liabilities shown on her financial affidavit and hold the plaintiff harmless.
3. The 1985 BMW is awarded to the defendant.
4. The 1996 Chevrolet is awarded to the plaintiff. He is to pay the loan balance and hold the defendant harmless therefrom.
5. The parties are to divide all personal property to their mutual satisfaction within thirty days from the date this decision is filed. In the event of any disputes the court retains jurisdiction to determine such dispute.
6. The court awards to the defendant exclusive possession of the marital residence at 111 Pheasant Road, West Haven, Connecticut. The defendant is to provide to the plaintiff at least six months advance written notice should she wish to vacate the family residence. She is responsible for keeping the mortgage payments current on the family residence during the time she occupies that property including the six months required advance notice. The property is to be placed on the market for sale on the earliest of the following dates:
(a) Shannon graduating from eighth grade at St. Brendan's;
(b) the commencement of a foreclosure action, or
(c) the defendant vacating the marital residence.
In the event the defendant does not give the required six months notice then she is still responsible for the mortgage payments on the marital residence through the six months period that notice should have been given. The parties are to thereafter be equally responsible for the mortgage payments until the property is sold. Upon the sale of the property the net proceeds from the sale are to be divided equally between the parties. The court finds that the additional financial obligation upon the plaintiff to pay for one-half of the school costs at St. Brendan's results in a CT Page 10971 deviation from the child support guidelines and finds that the guidelines are inappropriate and equitable based on the best interest of the children to continue to attend St. Brendan's.
7. The bank accounts shown on the defendant's financial affidavit totaling $59 are awarded to the defendant.
8. The bank accounts shown on the plaintiffs financial affidavit are awarded to the plaintiff.
9. The stocks and bonds shown on the plaintiffs financial affidavit are ordered divided equally between the parties.
10. The court awards to the defendant 27% of the present value of the plaintiffs pension plan before reduction for marital coverture by QUADRO. The defendant is responsible for preparing the QUADRO and the court retains jurisdiction over any disputes that may involve the language of the QUADRO.
11. The 401k plan owned by the plaintiff with a value of $10, 200 is ordered divided equally between the parties, to be paid over in accordance with paragraph E2.
12. The camper shown on the plaintiff's financial affidavit is awarded to the plaintiff.
E. BY WAY OF ATTORNEYS' FEES
 1. No attorneys' fees are awarded in favor of the plaintiff or the defendant.
2. The court finds that a reasonable counsel fee for the guardian ad litem is $12,200. The court orders that the parties be equally responsible for the payment of that fee and that it be paid in part by the 401k plan of the plaintiff which the court has ordered divided equally between the parties being turned over to the guardian ad litem in partial payment of the fees with a balance of the fees to be paid equally between the parties at the rate of $10 per week commencing September 1, 1999 and weekly thereafter.
F. MISCELLANEOUS ORDERS
 1. All pendente lite orders remain in effect until the date this decision is filed and any arrearages are not merged into the CT Page 10972 judgment.
2. The parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed for so long as there is an outstanding alimony order or an outstanding support order or any arrearages relating to either order.
3. The plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature who shall send it to the guardian ad litem for signature and filing.
Sidney Axelrod, Judge